1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8                    EASTERN DISTRICT OF CALIFORNIA

9

10   **LONGSTREET DELICATESSEN, FINE**        1:06-CV-00986-OWW DLB
     **WINES & SPECIALITY COFFEES,**
11   **L.L.C, a Virginia Company;**
     **SHARON L. WINTORY, an**                **MEMORANDUM DECISION AND ORDER**
12   **individual; ELLEN**                    **GRANTING DEFENDANT'S CROSS-**
     **ANSOLABEHERE, an individual,**         **MOTION TO DISMISS FOR LACK OF**
13                                            **STANDING (DOC. 29); DENYING**
                     **Plaintiffs,**          **PLAINTIFFS' MOTION FOR SUMMARY**
14                                            **JUDGMENT (DOC. 26)**
          **v.**
15
     **JERRY R. JOLLY, DIRECTOR,**
16   **California Alcohol Beverage**
     **Control Board,**
17
                     **Defendant.**
18

19                    1.   __INTRODUCTION__

20        This matter comes before the court based on Plaintiffs'

21   complaint that Cal. Bus. & Prof. Code § 23661.2 and § 23661.1,

22   which regulate the out-of-state shipment and delivery of wine

23   into California, are unconstitutional in violation of the dormant

24   Commerce Clause, U.S. Const. Article I, §8, Cl. 3, and violate

25   Plaintiffs' civil rights under 42 U.S.C. § 1983.  (Doc. 1,

26   Complaint, Filed July 28, 2006.)  The Plaintiffs moved for

27   summary judgment.  (Doc. 27, Plaintiffs' Motion for Summary

28   Judgment, Filed September 12, 2006.)  Defendant opposed the

                              **1**

motion and moved to dismiss Plaintiffs' complaint for lack of standing. (Doc. 29, Opposition to Motion for Summary Judgment, Filed October 6, 2006.)

## 2.   PROCEDURAL BACKGROUND

Plaintiffs filed their Complaint on July 28, 2006. (Doc. 1, Complaint.)  Plaintiffs then filed a motion for summary judgment and a finding that Cal. Bus. & Prof. Code § 23661.2 and § 23661.1 unlawfully violates the Commerce Clause and 42 U.S.C. § 1983. (Doc. 27, Motion for Summary Judgment ("Motion"), Filed September 12, 2006.)  Defendant opposed Plaintiffs' motion and also moved to dismiss Plaintiffs' Complaint for lack of standing. (Doc. 29, Opposition to Motion for Summary Judgment ("Opposition"), October 6, 2006.)  Defendant also filed several objections to Plaintiffs' evidence submitted in support of their motion. (Doc. 30, Evidentiary Objections, October 6, 2006.)  On October 16, 2006, Plaintiffs filed their reply to Defendant's Opposition and to Defendant's Evidentiary Objections. (Doc. 37, Reply to Opposition to Motion for Summary Judgment; Doc. 43, Reply Response to Defendant's Objections to Plaintiff's Evidence, Filed October 16, 2006.)

On November 7, 2006, Defendant filed a request for consideration of a ruling in *Nothing to It!!! v. Jerry R. Jolly*, 06-02653 MJJ (N.D.Cal. November 3, 2006.). (Doc. 45, Request for Consideration of Ruling, Filed November 7, 2006.)  Plaintiffs filed a request for judicial notice of the files and records

1  filed in *Nothing To It!!!*[1] on December 29, 2006. (Doc. 48,

2  Request for Judicial Notice, Filed December 29, 2006.)  On

3  January 1, 2007, Defendant opposed Plaintiffs' request for

4  judicial notice. (Doc. 50, Defendant's Opposition to Plaintiff's

5  Request for Judicial Notice, Filed January 1, 2007.)

### 3.  FACTUAL AND LEGAL BACKGROUND

**A.   Cal. Bus. and Prof. Code § 23661.2**

8  Plaintiffs first contest the constitutionality of Cal. Bus.

9  and Prof. Code § 23661.2.[2]  Plaintiffs argue that, under the

10 statute, only if a state has reciprocal shipping privileges with

11 California, can retail licensees and individuals of that state

12 ship, no more than two cases of wine per month to adult residents

13 of California for personal use and not for resale.  Plaintiffs

14 argue that the statute unlawfully discriminates in at least three

15 ways:

[1] Plaintiffs did not attach the files they are requesting judicial notice for.  The files are not found anywhere in the record.  Plaintiffs only attached files from the case of *Coulombe v. Jolly*, 447 F. Supp. 2d 1117 (C.D. Cal. 2006).

[2] Cal. Bus. and Prof. Code § 23661.2 states in pertinent part:

> "Notwithstanding any other law, an individual or retail licensee in a state that affords California retail licensees or individuals an equal reciprocal shipping privilege, may ship, for personal use and not for resale, no more than two cases of wine (no more than nine liters each case) per month to any adult resident in this state.  Delivery of a shipment pursuant to this subdivision shall not be deemed to constitute a sale in this state.  The shipping container of any wine sent into or out of this state under this section shall be clearly labeled to indicate that the container cannot be delivered to a minor or an intoxicated person."

**3**

1. As between in-state and out-of-state licensed retailers in non reciprocity states, if the State does not have a reciprocal shipping privilege with California, then retail licensees and individuals in non reciprocity states are not allowed to ship any wine to adults in California.

2. As between licensed retailers in a reciprocity state versus licensed retailers in a non reciprocity state, licenced retailers in reciprocity states can ship 2 case per month of wine to an individual within California but a licensed retailer in a non reciprocity state cannot ship any wine to an individual in California.

3. As between in-state retailers and out-of-state licensed retailers in a reciprocity state, out-of-state licensed retailers in reciprocity states are limited to a shipment of two cases of wine per month to individuals in California whereas in-state retailers may make unlimited shipments to California individuals.

**B.   Cal. Bus. & Prof. Code § 23661.1**

Plaintiffs also dispute the constitutionality of the chartered flight provision in Cal. Bus. & Prof. Code § 23661.1.[3]

---

[3]  Cal. Bus. & Prof. Code § 23661.1 states in pertinent part:

"Notwithstanding any other provision of law, an adult passenger on board a chartered airplane on a

**4**

Plaintiffs argue that even though not part of the reciprocity sales regime, the discrimination § 23661.1 effects is generically similar in many ways to that inflicted by the reciprocity regime.  According to Plaintiffs, under the statute: 1. an adult on a chartered flight, 2. that starts and ends in the continental US, and 3. does not stop outside the continental US, 4. can bring into California one quart of wine per year. Plaintiffs argue that § 23661.1 discriminates against out-of-state interests as follows:

1.   § 23661.1 does not allow an adult passenger on board a chartered or regularly scheduled airplane on a flight which commences in Alaska or Hawaii and terminates in California and which lands outside the continental United States to bring any wine into California but allows passengers on a chartered flight that commences and terminates in the United States but does not land outside the United States to bring into California one quart of wine per year

2.   An adult passenger on board a chartered airplane on a flight which commences and terminates in the

flight which commences and terminates in the continental United States and which does not land outside the continental United States, may bring not to exceed one quart of alcoholic beverages into this State for household or personal use. Such alcoholic beverages shall be exempt from state licensing restrictions. No person shall bring in more than one quart of alcoholic beverages during any calendar year pursuant to the authority granted in this section."

continental United States and does not land
outside the continental United States is
restricted to bringing one quart of wine into
California, but passengers on board a chartered
plane on a flight that commences and terminates in
California, without landing outside of California,
is allowed to carry an unlimited amount of wine on
that flight into California

3. Adults aboard a non chartered regularly scheduled
airplane flight which commences and terminates in
the continental United States and which does not
land outside of the continental United States
cannot bring into California any wine on that
flight but adult passengers on board a chartered
plane on a flight that commences and terminates in
the continental United States and which does not
land outside the continental United States are
allowed to bring into California an amount of wine
no greater than one quart.

4. Adult passengers on chartered flights that
commence and terminate in the continental United
States and do not land outside the continental
United States are limited to one quart of wine per
year they can bring into California but there are
no restrictions placed on the cumulative annual
amounts of wine a passenger can travel with on
board a chartered or non chartered regularly
scheduled flight within California.

**6**

By contrast, passengers on any flights that commence and terminate in California have an unlimited right to carry unlimited quantities of wine with them.  Plaintiffs argue that as a result of the statutes' facial discrimination it must be declared unconstitutional.

**C.   The Parties**

### I.   Plaintiffs Ansolabehere and Longstreet

Plaintiff Ellen Ansolabehere, is an adult resident of Bakersfield, California.  She ordered five (5) cases of Barboursville Virginia cabernet wine to be shipped to her at her residence for her personal use (and not for resale) from Plaintiff Longstreet's Delicatessen, Fine Wines, and Specialty Coffees, LLC ("Longstreet").  Longstreet is a wine retailer located in Petersburg, Virginia and licensed by the Commonwealth of Virginia to sell and ship wine including to, among others, residents of other States (for their personal use and not for resale) should that recipient State's laws so allow.

Ansolabehere placed her order by letter in which she ordered five cases of wine to be delivered at her residence to herself or to some other person over the age of 21 who would sign for the wine.  Plaintiff Longstreet, however, was unable to fill her request because it is located in Virginia, a non reciprocity state.

Virginia allows its retailers to engage in the direct sale and shipment of wine to consumers in other States.  However, Ansolabehere alleges that because Virginia is not a "reciprocity" state with California, Longstreet would violate California law if it shipped and delivered the five cases of wine to her for her

**7**

personal or household use in California.  In addition, Longstreet

informed Ansolabehere that even if Virginia was a "reciprocity"

state so that California would have allowed Virginia's retailers

to sell and ship wine directly to California consumers, that it

was still unable to fully comply with her order since California

law limited such shipments to two (2) cases per month.

Despite this, Ansolabehere desires to and would, if it were

not contrary to California law, purchase, for her personal or

household use and not for resale, and have shipped directly to

her at her home, three cases of wine or more per month from

Longstreet or other licensed retailers located in non-reciprocity

states.  She would also purchase three or more cases of wine in

one month from a licensed retailer located in a reciprocity state

for personal use and not for resale if it were not contrary to

California law.  She has not alleged she actually placed such

additional orders.

## II.  Plaintiffs Ansolabehere and Wintory

Plaintiff Sharon Wintory is over the age of 21 years and

resides in Henrico County, Virginia.  Neither she nor Plaintiff

Ansolabehere is a holder of any license issued by any State or

the federal government relating to the importation, distribution,

shipment or sale of alcoholic beverages, including wine.  Within

the past year Plaintiff Wintory wanted to ship wine as a gift to

Ellen Ansolabehere (for personal use and not for resale) at her

home in Bakersfield, California the receipt of which would have

to be signed for by Ansolabehere or other adults at her home.

Plaintiff Wintory also wanted to ship wine to other friends in

California to be signed for by an adult person to whom she

**8**

1  shipped the wine.  Wintory, however, was unable to do so since,

2  according to Plaintiffs, the shipment of wine by her, as an

3  individual residing in Virginia, to Ansolabehere or other

4  California adult residents of California is not permitted by

5  Section 23661.2.  The wine which Wintory would have shipped would

6  have been purchased by her in Virginia from a business entity

7  licensed by the Commonwealth of Virginia to sell wine to adults

8  and which is located in the Commonwealth.  Plaintiff Ansolabehere

9  would have accepted this gift of wine from Plaintiff Wintory.

10  According to Plaintiff both Wintory and Plaintiff Ansolabehere

11  would, if required, pay any taxes, duties, or other fees

12  attendant to the shipment of wine to Ansolabehere or other

13  resident of California to whom Wintory shipped wine.  Wintory has

14  not alleged or offered evidence she has made any such purchases.

15                  **III. Plaintiff Ansolabehere and Airplane Flights**

16       Plaintiffs argue that within one year preceding the filing

17  of the Complaint in this action and continuing into the future,

18  Plaintiff Ansolabehere would carry with her into California more

19  than one (1) quart of wine a year as a passenger on a chartered

20  airplane on a flight which commences and terminates in the

21  continental United States and which does not land outside of the

22  continental United States were she not precluded from doing so by

23  Section 23661.1.  She would also, within one year preceding the

24  filing of the Complaint in this action and continuing into the

25  future, carry with her into California one or more quarts of wine

26  per year as a passenger on a non-chartered airplane on a flight

27  which commences and terminates in the continental United States

28  and which does not land outside the continental United States

**9**

1  were she not precluded from doing so by California law.

2       By the same means and during that same time period,

3  Plaintiff Ansolabehere would carry with her into California more

4  than one (1) quart of wine a year as a passenger on a chartered

5  airplane on a flight which commences in Hawaii and/or Alaska

6  (which wine she would have purchased in Hawaii or Alaska) and

7  which, without landing at any point outside of California,

8  terminates in the California were she not precluded from doing so

9  by Section 23661.1.  During this same period, Ansolabehere would

10 carry with her into California one or more quarts of wine per

11 year as a passenger on a non-chartered airplane on a flight which

12 commences in Hawaii and/or Alaska (which wine she would have

13 purchased in Hawaii or Alaska) and which, without landing at any

14 point outside of California, terminates in California were she

15 not precluded from doing so by California law.  She would pay any

16 taxes or duties owing on the wine brought in with her.

17 Ansolabehere has not alleged she has actually done so.

18       **D.   Botting Letter of April 19, 2003**

19       There is a factual dispute as to whether or not Virginia is

20 a "reciprocity" state such that a licensed retailer or individual

21 may ship no more than two cases of wine per month under the

22 statute.

23       Defendant has submitted a letter from Matthew Botting dated

24 April 19, 2003 acknowledging that Virginia is a reciprocity

25 state. (Doc. 29, Declaration of Matthew Botting ("Botting

26 Declaration") in support of Defendant's Motion for Dismissal for

27 Lack of Standing and Opposition to Plaintiff's Motion for Summary

28 Judgment, Filed October 6, 2006).  Matthew Botting was the Chief

**10**

Counsel for the California Department of Alcoholic Beverage Control ("ABC") in April 2004. (*Id.* at ¶ 1)  He now holds the position of ABC Staff Counsel III. (*Id.* at ¶ 3)  While serving as Chief Counsel for the ABC, Botting wrote a letter dated August 19, 2003 opining that Virginia is a reciprocity state, after researching the legal issues for the ABC, to respond to a request from the Virginia Department of Alcoholic Beverage Control that California recognize Virginia as a reciprocity state. (*Id.* at ¶ 4)

However, Plaintiffs request that the court take note of a judicial admission Defendant made in a joint stipulation in the case of *Coulombe v. Jolly*, 447 F. Supp. 2d 1117 (C.D. Cal. 2006.) Plaintiffs offer evidence of a joint stipulation of uncontroverted facts entered into by the parties in *Coulombe*. (Doc. 13, Affidavit of Matthew S. Hale ("Hale Declaration") in support of Plaintiff's Motion for Summary Judgment, Ex. 3, Filed August 21, 2006.)  The stipulation was signed on May 17, 2006 and provides a list of reciprocity states.  Virginia is not on the list of reciprocity states.

### E.   Enforcement of §§ 23661.1 and 23661.2 by California's Department of Alcoholic and Beverage Control

Defendant also offers evidence that Botting researched the ABC files regarding its history on the issuance of citations to out-of-state persons or entities, prior prosecutions, or recommendations for prosecutions, of persons or entities in violation of §§ 23661.1 and 23661.2. (Doc. 29, Botting Declaration, ¶ 8).  According to Botting the ABC does not have a system in place, nor is it contemplating a system to police

**11**

packages shipped by common carrier to an individual citizen's home. (*Id.* at ¶ 9)  The ABC has no means of tracking what winery, retailer or individual is shipping wine to a California consumer for personal consumption. (*Id.* at ¶ 10)  Reports of alcohol importation, for taxation purposes, are made to the Board of Equalization, not the ABC. (*Id.* at ¶ 11)  The ABC does not police the amount of alcoholic beverages a person carries on board air flights into this state or within this state. (*Id.* at ¶ 12)  The ABC has no personnel at airports, or landing strips, to check passengers boarding or arriving on commercial or charter air flights from any destination. (*Id.*)  The ABC has no regulations or procedures in place, nor is it contemplating procedures, that would allow it to inspect luggage, search passengers or ask passengers how much wine they are carrying. (*Id.*)

Defendant also argues that the ABC does not have a budgetary provision for enforcement of Cal. Bus. & Prof. Code §§ 23661.1 or 23661.2, nor is it contemplating a provision that would allow it to utilize its staff to pursue the policing of shipments of wine to a California citizen's home or monitoring passengers who choose to carry alcoholic beverages into California on air flights. (*Id.* at ¶ 13)  In Botting's search of the ABC files, he found no record of the ABC having issued a citation, or threatened to issue a citation, to a California citizen for receiving wine as a gift or accepting delivery of wine purchased in another state. (*Id.* at ¶ 14)

Also, the ABC has no proposal before it to begin issuing citations, or warnings to California citizens receiving shipments of wine from other states. (*Id.* at ¶ 15)  In his search of the

ABC's files, Botting has found no record indicating that the ABC has ever issued, or threatened to issue, a citation to a passenger commencing or terminating a flight, or landing in California on a leg of a flight for carrying more than a quart of wine. (*Id.* at ¶ 16)  Botting also declares he found no record indicating that the ABC has ever cited, or reported, an out-of-state retailer for shipping wine to a California consumer.  The ABC has no proposal before it to begin policing such shipments. (*Id.* at ¶ 17)  There is no record that the ABC has ever prosecuted, nor recommended prosecution, of any person or entity for violation of either code section. (*Id.* at ¶ 18)  The ABC has no proposal before it to consider implementing procedures for prosecuting any person or entity for violation of either section 23661.1 or 23661.2. (*Id.* at ¶ 19)

Further, Defendant sent a letter dated August 19, 2003 to Curtis Coleburn, Chief Operating Officer of the Virginia Department of Alcoholic Beverage Control. (Doc. 29, Botting Declaration, Exhibit A)  According to the letter, "California's reciprocal shipping statute is intended to be liberally construed to extend reciprocity privileges whenever possible." (*Id.*) Defendant wrote that in his reviewing the matter further, the California ABC sought input from the Wine Institute and learned that Virginia's statute is based upon the Wine Institute's "Model Shipment Bill" language. (*Id.*)  As a result, and in the interest of furthering reciprocity rather than restricting it, Defendant determined that Virginia's statute is considered to be reciprocal with California. (*Id.*)  No contrary evidence is offered that the California ABC has ever enforced the flight shipment restrictions

**13**

of alcoholic beverage under §§ 23661.1 or 23661.2.

### 4.  STATEMENTS OF FACTS

#### A.  Undisputed Facts

Defendant Jerry R. Jolly is sued in his capacity as Director of the ABC, a position to which he was duly appointed pursuant to California Business & Professions Code § 23050. (PSUF, No. 4.) As Director, he is responsible for the enforcement of provisions of the California Alcoholic Beverage Control Act, California Business & Professions Code § 23000, et seq,, ("Act" or "ABC Act"), including those sections dealing with the sale, importation, shipping, and delivery of alcoholic beverages into the State of California and their sale, purchase and transportation there. (*Id.*)  He is sued only in his official capacity as Director acting under color of his authority and pursuant to the official policy of California. (*Id.*)

California Bus. & Prof. Code Sec. 23661.2, which deals with the importation of wine into California for personal or household use, and not for resale, provides:

> "Notwithstanding any other law, an individual or retail licensee in a state that affords California retail licensees or individuals an equal reciprocal shipping privilege, may ship, for personal use and not for resale, no more than two cases of wine (no more than nine liters each case) per month to an adult resident in this state."

(PSUF, No. 5.)  Delivery of a shipment pursuant to this subdivision shall not be deemed or constitute a sale in this state. (*Id.*)  "The shipping container of any wine sent into or

**14**

out of this state under this section shall be clearly labeled to indicate that the container cannot be delivered to a minor or an intoxicated person." (*Id.*)

### B. Plaintiffs' Disputed Facts

#### I. The Parties

Plaintiff Ansolabehere is an individual who resides in Bakersfield, California and within this Judicial District.  At all times mentioned herein she was (a) over the age of 21 years, and (b) not a holder of any California license relating to the importation, distribution, or sale of alcoholic beverages, including wine. (PSUF, No. 1)

Plaintiff Wintory at all times is (a) a citizen of the Commonwealth of Virginia, (b) over the age of 21 years, and (c) not a holder of any California license relating to the importation, distribution, or sale of alcoholic beverages, including wine. (PSUF, NO. 2)

Plaintiff Longstreet is (a) a corporation incorporated in the Commonwealth of Virginia, having its principal place of business located in Petersburg, Virginia, (b) in business as a retailer of wines located in Virginia providing wine to consumers in the Commonwealth and throughout the United States (wherever the direct shipment of wine to consumers is permitted by law), and (c) holds a license issued by, among others, the Virginia Alcoholic Beverage Department to engage in such retail sales and shipment of wine. (PSUF, No.3)

#### II. The Statutory Scheme

According to Plaintiffs' interpretation California Bus. & Prof. Code Sec. 23661.2, when read in conjunction with California

**15**

Bus. & Prof. Code Sec. 23661:

(a) allows an individual in a State that affords
California retail licensees or individuals an equal
reciprocal shipping privilege ("Reciprocity States") to
ship, for personal use and not for resale, no more than
two cases of wine per month to an adult resident of
California, but denies an individual in a State that
does not afford California retail licensees or
individuals an equal reciprocal shipping privilege
("Non-reciprocity States") the right to ship any wine
for personal use and not for resale to an adult
resident of California;

(b) allows a licensed retailer in a Reciprocity State
to ship, for personal use and not for resale, not more
than two cases of wine per month to an adult resident
of California, but denies a licensed retailer in a Non-
Reciprocity State the right to ship any wine for
personal use and not for resale to any adult resident
of California; and

(c) places no restriction on the amount of wine an
adult resident or licensed retailer located in
California may ship to an adult resident of California,
but restricts to two cases per month the amount of wine
that an individual or licensed retailer in a
Reciprocity State may ship to an adult resident of
California. (PSUF No. 6.)

A violation of Sections 23661.1 and/or 23661.2 is a
misdemeanor under California Bus. & Prof. Code Sec. 23670, which

**16**

states: "Every person violating the provisions of this article is guilty of a misdemeanor." (PSUF, No. 7.)

Wine imported into California in violation of Sections 23661, 23661.1 or 23661.2 is subject to forfeiture pursuant to California Bus. & Prof. Code Sec 23666, which deals with unauthorized imports: "Alcoholic beverages imported into this State contrary to the provisions of Section 23661 to 23664, inclusive, shall be seized by the Department." (PSUF, No. 8.)

As stated in the Historical and Statutory Notes of the California Legislature accompanying Section 3 of Stats. 1994, c. 394 (A.B. 611), which added and amended § 23661.2:

> "It is the intent of the Legislature in enacting
> Section 1 of this act to encourage the adoption of
> reciprocal wine shipping privileges legislation in
> other states for purposes of improving fairness and
> equity for the small, family vintners and winegrowers
> of California. Currently, only 12 states have adopted
> reciprocal wine shipping privileges legislation, [¶]
> The Legislature encourages the Department of Alcoholic
> Beverage Control to notify other states of California
> laws relating to reciprocal wine shipping privileges
> through established channels of communication."

(PSUF, No. 9)

At least thirteen (13) states, including California, have "reciprocity" laws extending an equal reciprocal shipping privilege to their residents or licensed retailer to ship wine, for personal use  and not for resale, to adults in other States also having a similar reciprocal shipping privilege which allows

**17**

its individual citizens or licensee to ship, for personal use and not for resale, wine to adult residents, in other States having reciprocal shipping privilege. (PSUF, No. 10)

The States having such "reciprocity laws," in addition to California, include: (a) Colorado, pursuant to Colo. Rev. Stat. § 12-47-104 (2004); (b) Hawaii, pursuant to H.R.S. § 281-33.5; (c) Idaho, pursuant to Idaho Code §23-1309A (2005); (d) Illinois, pursuant-to 235 I.L.C.S. 5/6-29 (2005); (d) Iowa, pursuant to Iowa Code § 123.187 (2005); (e) Minnesota, pursuant to Minn. Stat. § 340A-417 (2005); (f) Missouri, pursuant to Rev. Mo. § 311.462 (2005); (g) New Mexico, pursuant to N.M. Stat. Ann. § 60-7A-3 (2005); (h) Oregon, pursuant to O. R. S. §471.229(2003); (i) Washington, pursuant to Wash. Rev. Code Ann. § 66.12.190 (2005); (j) West Virginia, pursuant to W.Va. Code § 60-8-6 (2005); and, (k) Wisconsin, pursuant to Wis. Stat. §§ 125.58(4), 125.68(10), 139.035 (2004). (PSUF, No. 11)

Plaintiffs argue that retailers located in a Non-Reciprocity State such as Virginia, which sell, ship, and deliver wine to California residents in California may violate the Alcoholic Beverage Control Act of the State in which they are located should they sell, ship, and deliver wine directly to adult California residents. (PSUF No. 12)  No Virginia statute is referred that would be violated by the transactions and proposed transactions at issue.

A violation of the laws of the State of California by a retailer located in a Non-Reciprocity State that sells, ships, and delivers wine to an adult consumer in California in violation of California law can result in the suspension or revocation of

**18**

the retailer's license. *See, e.g.*, ibid; Va. Code Ann. §§ 4.1-225(c), 4.1-324(A)(4) and (B) (1006). (PSUF, No. 13.)

The Twenty First Amendment Enforcement Act, 27 U.S.C. § 122a, authorizes state attorneys general to enforce the liquor laws of their State in their home-state federal courts against out-of-state retailers, to among other things enjoin the direct marketing of wine in violation of State laws banning or limiting such marketing. (PSUF, No. 14.)

A retail package off-sale wine licensee may sell, to consumers only and not for resale, wine in packages and in quantities of 52 gallons or less per sale, for consumption off the premises where sold. Cal. Bus. & Prof. Code § 23393. California law does not otherwise limit the amounts of wine that California instate retailers that hold off-sale licenses can sell, and/or ship and/or deliver, permitting unrestricted quantities of wine to be sold directly to California adult residents for their personal use and consumption (not for resale). Cal. Bus. & Prof. Code § 25605; Cal. Code Regs. Tit. 4, § 17(c)(2006); (PSUF, No. 15.)

California does not prohibit California residents from shipping unrestricted quantities of wine directly to other California adult residents for their personal use and not for resale. (PSUF, No. 16.)

### III. Ansolabehere's Attempted Wine Purchase

Plaintiff Ansolabehere claims that by letter dated July 28, 2006 to Longstreet, Ansolabehere ordered five (5) cases of wine (Barboursville Virginia cabernet) to be shipped to her at her residence for her personal or household use (and not for resale).

(PSUF, No. 17.)   Including a copy of her California driver's license to assure Longstreet that she was over the age of 21, she also ordered three (3) cases of wine (Barboursville Virginia cabernet) to be shipped to her at her residence on December 1, 2006, March 1, 2007, and June 1, 2007, respectively. (*Id.*)   She informed Longstreet that she would be available to sign for the wine when it was delivered to her home residence as requested. (*Id.*)

By return letter, dated July 28, 2006 from Longstreet, Ansolabehere was informed that while Longstreet was able to sell her wine (since she was over the age of 21) it was unable to ship wine to her at her home in California because Longstreet is located in Virginia and, while Virginia does allow its retailers to engage in the direct sale and shipment of wine to consumers in other States, it is not, as specified in California Bus. & Prof. Code § 23661.2, a "state that affords California retail licensees or individuals an equal reciprocal shipping privilege," (i.e., a Reciprocity State) and, hence, that it was precluded from doing so by California law. (PSUF, No. 18.)   In addition, Longstreet informed Ansolabehere that even if Virginia was a Reciprocity State it was still unable to comply with her order since Section 23661.2 limits shipments of wine to adult individuals in California to two cases per month. (*Id.*)

Plaintiffs claim that within one year preceding the filing of the Complaint in this action and continuing into the future, Ansolabehere would, were it not contrary to Section 23661.2, enter into a contract for the purchase and shipment to her home (for personal or household use and not for resale) of three or

more cases of wine in one month from a licensed retailer located in a Reciprocity State. (PSUF, No. 19.)  There is no evidence she has placed such an order

Within one year preceding the filing of the Complaint in this action and continuing into the future, Ansolabehere would carry with her into California more than one (1) quart of wine a year as a passenger on a chartered airplane on a flight which commences and terminates in the continental United States and which does not land outside of the continental United States were she not precluded from doing so by California law (Bus. & Prof. Code § 23661.1). (*Id.*)  There is no evidence she has done so.

Within one year preceding the filing of the Complaint in this action and continuing into the future, Ansolabehere would carry with her into California one or more quarts of wine per year as a passenger on a non-chartered airplane on a flight which commences and terminates in the continental United States and which does not land outside the continental United States were she not precluded from doing so by California law. (PSUF, No. 22.)  There is no evidence she has done so.

Within one year preceding the filing of the Complaint in this action and continuing into the future, Ansolabehere would carry with her into California more than one (1) quart of wine a year as a passenger on a chartered airplane on a flight which commences in Hawaii and/or Alaska (which wine she would have purchased in Hawaii or Alaska) and which, without landing at any point outside of California terminates in California were she not precluded from doing so by California law (Bus. & Prof. Code § 23661.1). (PSUF, No. 23.)  There is no evidence she has done so.

Within one year preceding the filing of the Complaint in this action and continuing into the future, Ansolabehere would carry with her into California one or more quarts of wine per year as a passenger on a non-chartered airplane on a flight which commences in Hawaii and/or Alaska (which wine she would have purchased in Hawaii or Alaska) and which, without landing at any point outside of California terminates in California were she not precluded from doing so by California law. (PSUF, No. 24.)   There is no evidence she has done so.

## IV.   Wintory's Attempted Wine Purchase

According to Plaintiffs, within one year preceding August 18, 2006, Plaintiff Wintory wanted to ship three (3) or more cases of wine in a one month period as a gift to Ellen Ansolabehere (for personal use and not for resale) at her home in Bakersfield, California as well as to other friends of hers residing in California, the receipt of which would have to be signed for by Ellen Ansolabehere or other adult at her home, or by the adult person to whom Wintory otherwise shipped the wine. (PSUF, No. 20.)   Wintory was, however, unable to do so since the shipment of wine by her, an individual residing in Virginia, to Ansolabehere or other California adult resident of California is not permitted by California law (California Bus. & Prof. Code § 23661.2). (*Id.*)   The wine which she would have and wants to ship to Ansolabehere and others will be purchased by Wintory in Virginia from a business entity licensed by the Commonwealth of Virginia to sell wine to adults and which is located in the Commonwealth. (*Id.*) There is no evidence she has done so.

All plaintiffs are willing, able, and agree to pay any

**22**

taxes, duties, or other fees attendant to their shipment or importation of wine to California to be consumed for personal or household use and not for resale. (PSUF, No. 25.)  There is no evidence she has done so.

## V.  California Law and Its Relationship to Other States

Plaintiffs allege that the laws of most, if not all, of the Reciprocity and Non-Reciprocity States allow licensed retailers located in that State to sell, ship, and deliver wine directly to residents of other States if such direct sale and shipment of wine is allowed under that State's alcoholic beverage control laws. (PSUF, No. 26.)

Plaintiffs also claim that the laws of most, if not all, of the Reciprocity and Non-Reciprocity States allow retailers located in each such State to sell wine directly to consumers who visit their business premises and carry the purchased wine away with them. (PSUF, No. 27.)

The laws of most, if not all, of the Reciprocity and Non-Reciprocity States allow retailers located in each such State to sell wine to consumers and to ship the same to the consumer if not in violation of any law. (PSUF, No. 28.)

Plaintiffs argue that there are wines that are unavailable on California retailer's store shelves that are available from licensed retailers located in Non-Reciprocity States. (PSUF, No. 29.)  Adult residents of California and licensed retailers located in California may ship and deliver an unlimited amount of wine already physically present in California directly to an individual adult resident of California regardless of whether the

23

wine originally was purchased in California or elsewhere. (PSUF, No. 30.)

California Bus. & Prof. Code Sec. 23661.2, read in conjunction with Sec. 23661 and other California statutes, creates greater economic burdens and restrictions on individuals and licensed retailers located in non-reciprocity states than it does on individuals and licensed retailers located in Reciprocity States, including California, regarding the direct shipment of wine to California residents for purposes of their household or personal use and not for resale. (PSUF, No. 31.)

### C.   Defendant's Disputed Facts

Besides responding to Plaintiffs' statement of undisputed facts, the Defendant also offered its own set of disputed facts.

1. Virginia is a reciprocity state. (DSUF, No. 1).  California law does not preclude a retailer in any state from selling wine at retail, buying it at the supplier's price and having the supplier (winery) ship the wine to California consumers for personal use. (DSUF, No. 2)

2. Wineries in other states may ship wine to California they produce or bottle as well as the wines of any other grower or bottler. (DSUF, No. 3)

3. Barboursville Vineyards has an on-line site for purchasing wine for direct shipment to California. (DSUF, No. 4)

4. Barboursville Vineyards may sell wine at prices below wholesale and retail. (DSUF, No. 5)

5. The ABC Board ("Board") does not have a system in place to police packages shipped by common carrier to an individual citizen's home. (DSUF, No. 6)

**24**

6.   The Board has no proposal before it to allocate manpower, implement procedures, or otherwise begin, to police common carrier shipments of wine to California citizens for personal consumption and use. (DSUF, No. 7)

7.   Reports of importation of wine to California are made to the Board of Equalization for taxation purposes. (DSUF, No. 8)

8.   The Board does not police the amount of wine a passenger carries onto air flights any where in the continental United States, Alaska or Hawaii. (DSUF, No. 9)

9.   The Board has no personnel at airports, or air strips, no matter their location, to check passengers at embarkation or debarkation, to or from, or landing in, California. (DSUF, No. 10)

10.  The Board has no proposal before it to implement procedures, allocate personnel, or otherwise police, the amount of wine passengers carry on flights within California, or landing in California. (DSUF, No. 11)

11.  The Board has no procedures, or personnel, in place to question flight passengers about the amount of wine they may be carrying within or into California, to search their bags, to search them, or inspect their luggage. (DSUF, No. 12)

12.  The Board does not have a budgetary provision to allow it to utilize staff to police wine shipped by common carrier to a California resident's home for personal use. (DSUF, No. 13)

13.  The Board does not have a budgetary provision to allow it to utilize staff to police the amount of wine any person carries onto an air flight from any destination landing in California. (DSUF, No. 14)

14. The Board has no record of having issued a citation for violation of B & P Code section 23661.1. (DSUF, No. 15)

15. The Board has no record of having issued a citation for violation of B & P Code section 23661.2. (DSUF, No. 16)

16. The Board has no record of threatening to issue a citation for violation of B & P Code section 23661.1. (DSUF, No. 17)

17. The Board has no record of threatening to issue a citation for violation of B & P Code section 23661.2. (DSUF, No. 18)

18. The Board has no record of a citation, or a report to the home state, of an out-of-state vendor, including a retailer, for shipping wine to a California consumer. (DSUF, No. 19)

19. The Board has no proposal before it to begin to issue citations to out-of-state vendors, including retailers, for violation of California wine laws. (DSUF, No. 20)

20. The Board has no record of having prosecuted, or recommended prosecution to any law enforcement agency, of any person or entity under B & P Code sections 23661.1 or 23661.2. (DSUF, No. 21)

21. The Board has no proposal before it to prosecute, or recommend the prosecution, of any person or entity for violation of B & P Code sections 23661.1 or 23661.2. (DSUF, No. 22)

(Doc. 29, Jolly's Separate Statement of Disputed Facts, Ex. 1, Filed October 6, 2006)

## 5.   STANDARD OF REVIEW

Summary judgment is warranted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

**26**

genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998). Therefore, to defeat a motion for summary judgment, the non-moving party must show (1) that a genuine factual issue exists and (2) that this factual issue is material. *Id*. A genuine issue of fact exists when the non-moving party produces evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party. *See Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252-56 (1986). Facts are "material" if they "might affect the outcome of the suit under the governing law." *Campbell*, 138 F.3d at 782 (quoting *Anderson*, 477 U.S. at 248).

The nonmoving party cannot simply rest on its allegations without any significant probative evidence tending to support the complaint. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrell*, 477 U.S. 317, 322-23 (1986). The more implausible the claim or defense asserted by the nonmoving party, the more persuasive its evidence must be to avoid summary

judgment. *See United States ex rel. Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir. 1996).  Nevertheless, the evidence must be viewed in a light most favorable to the nonmoving party. *Id.;* Anderson, 477 U.S. at 255.  A court's role on summary judgment is not to weigh evidence or resolve issues; rather, it is to determine whether there is a genuine issue for trial. *See Abdul-Jabbar v. G.M. Corp.*, 85 F.3d 407, 410 (9th Cir. 1996).

### 6.  <u>DISCUSSION</u>

#### A.   Judicial Notice

Courts may take judicial notice of adjudicative facts that are not subject to reasonable dispute. *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003).  Courts may take judicial notice of some public records, including the records and reports of administrative bodies. *Id.*  The court may also take judicial notice of court filings. *Reyn's Pasta Bella*, *LLC v. USA, Inc.,* 442 F.3d 741, 746 n.6 (9th Cir. 2006).

Plaintiffs request that the court take judicial notice of "the files and records filed in *Nothing To It!!!, LLC v. Jolly*, 06-02653-MJJ (N.D. Cal 2006).  Plaintiffs argue that in *Nothing To It!!!*, the case was dismissed for lack of standing based on facts different from this case and "on the woefully inadequate allegations of the Complaint." (Doc. 48, Request for Judicial Notice.)  Plaintiffs argue that only conducting a side-by-side analysis of the allegations in the complaint in *Nothing to It!!!* and in this case is it possible to determine the difference between *Nothing To It!!!* and this case where Plaintiffs "do have standing."

Plaintiffs do not provide the court with a copy of the complaint in *Nothing To It!!!* or with any other document from that case in violation of the express requirement of Fed. R. Ev. P. 201(b)(2).

Plaintiffs' request for judicial notice is **DENIED.**

**B.    Judicial Admission of Stipulated Facts in *Coulombe v. Jolly*, 447 F. Supp. 2d 1117 (C.D. Cal. 2006).**

Under federal law, stipulations and admissions in the pleadings are generally binding on the parties and the Court. *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988)  Not only are such admissions and stipulations binding before the trial court, but they are binding on appeal as well. *Id.* "Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact. *Id.* Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them." *Id.*

Factual Stipulations in a trial brief may be treated as judicial admissions. *United States v. Davis*, 332 F.3d 1163, 1168 (9th Cir. 2003).  Such admissions, which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact, are binding on both the parties and the court, including the appellate court. *Id.*

Plaintiffs request that the court accept as Judicial Admissions a stipulation of facts the parties entered into in *Coulombe v. Jolly.* (Doc. 13, Affidavit of Matthew Hale, Ex. 3, Filed August 21, 2006).  Plaintiffs however request that the

stipulation be admitted for the truth of the matter asserted in the stipulation.  The court may find a judicial admission based on the parties' stipulation, if contained in a publicly available document, a true copy of which is provided, if the parties are identical.

Plaintiffs request for judicial admission only as to the existence of the stipulation of facts in *Coulombe v. Jolly*, is **GRANTED**.

### C.   Standing

In its opposition brief, Defendant moves to dismiss Plaintiffs' complaint for lack of standing.  "To satisfy the Article III case or controversy requirement, a litigant must have suffered some actual injury that can be redressed by a favorable judicial decision." *Iron Arrow Honor Society v. Heckler*, 464 U.S. 67, 70 (1984); *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976); *NAACP., Western Region v. City of Richmond*, 743 F.2d 1346, 1352 (9th Cir. 1984).  Standing is a judicially created doctrine that is an essential part of the case-or-controversy requirement of Article III. *Pritikin v. Department of Energy*,  254 F.3d 791, 796 (9th Cir. 2001).  "Standing, unlike other jurisdictional doctrines, focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." *Id.* (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976))

Defendant argues that Plaintiffs Wintory and Ansolabehere lack standing because:

1.   Virginia is a reciprocity state and Plaintiffs are allowed under  23661.2 to ship two cases of wine a

30

month into California

2. Wintory is from VA and has the same rights as a CA citizen because she can buy and ship two cases of wine to CA tax free.

3. Wintory can buy [any quantity of] the wine at retail price from Longstreet and Longstreet can have a licensed winery ship the wine to California.

4. Wintory has not shown that she bought wine from Longstreet and suffered an adverse injury from the California law.

5. Wintory has not shown that there is a risk of imminent injury or prosecution.

6. In addition, 23661.1 on its face does not mention commercial flights commencing in AK or HI.

7. Ansolabehere has not offered facts to show that she tried to carry more than a quart of wine onto a plane bound for California and was stopped or even questioned at embarkation or debarkation.

8. The statute does not place a greater burden on Longstreet than it places on its CA counterpart.

9. The statute allows Longstreet to sell unlimited quantities of wine for shipment to CA through a licensed California winery.

10. Longstreet has not asserted facts to show that it has been prosecuted under the statute.

Plaintiffs, on the other hand, argue that they have standing for the following reasons:

1.  Plaintiff Ansolabehere is an individual living in
    Bakersfield, CA.  Plaintiffs argue that
    Ansolabehere has standing because, 1) she is
    prohibited by 23661.2 from purchasing wine from a
    retailer in a Non-Reciprocity State and 2) under
    23661.1 she cannot (I) buy wine in HI or AK and
    bring it back to CA on a chartered plane flight or
    (ii) non chartered flight within the continental
    US.

2.  Plaintiff Wintory is an individual living in
    Henrico County, Virginia.  Plaintiffs argue that
    Wintory has standing because she cannot ship or
    deliver or give Ansolabehere any wine from
    Virginia, a Non-Reciprocity State.  If Virginia
    were a reciprocity state then it would be limited
    to two (2) cases/month.

3.  Longstreet is a wine retailer in Virginia.
    Plaintiffs argue that Longstreet has standing
    because 1) it cannot ship or deliver or give
    Ansolabehere any wine from Virginia, a Non-
    Reciprocity State and 2) if Virginia were a
    Reciprocity State then would be limited to two (2)
    cases/month.

Plaintiffs argue that, under §§ 23661.1 and 23661.2,
Longstreet and Ansolabehere are unable to enter into a contract
for the sale of wine and Wintory and Ansolabehere are unable to
enter into an oral contract or gift arrangement from Wintory to
Ansolabehere.

## I.   Similar Disputes in the Ninth Circuit

Two recent California District Court cases have found no standing for Plaintiffs in cases similar to this one.   In *Coulombe v. Jolly*, 447 F. Supp. 2d 1117 (C.D. Cal. 2006) Plaintiffs were wine buyers in California and Texas and a Virginia wine retailer who brought suit against the Director of the ABC under § 1983, contesting the validity of § 23661.2 only. *Id.* at 1118.   Plaintiff's complaint alleged that Plaintiff Coulombe wrote a letter to Plaintiff K&K, a licensed wine retailer in Virginia requesting to purchase five cases of a certain wine. *Id.*   Coulombe's letter included payment information and a copy of his drivers license to verify that he was old enough to purchase the wine. *Id.*   K&K wrote back to Coulombe stating that it could not ship the wine because Virginia is not a reciprocity state and it was barred from shipping wine to California. *Id.* at 1119.   However, K&K stated that even if it could ship the wine to California, it would be limited to a shipment of two cases. *Id.*   Plaintiff Daniel M., a resident of Texas sued Defendant on the grounds that he was unable to ship more than two cases of wine from a Virginia wine retailer to his father, a resident of California. *Id.*   Plaintiffs contentions to establish standing in *Coulombe* are identical to the arguments they advance in this case.[4] *Id.* at 1119-1120.

---

[4] Plaintiffs' standing argument in *Coulombe* involved identical language as the arguments made in this case.   However, although Plaintiffs make identical arguments in this case, they do not offer the legal support offered in *Coulombe.*   The court in *Coulombe* reasoned that "notwithstanding Plaintiffs' sparse standing allegations, it is clear that Plaintiffs are initiating a pre-enforcement challenge to the constitutionality of §

**33**

*Coulombe* determined that those Plaintiffs lacked standing because they had not alleged facts establishing that they suffered an injury in fact. *Id.* at 1122.  The court reasoned that Plaintiffs failed to allege a "concrete" plan to violate § 23661.2. *Id.*  Plaintiffs alleged that they would either ship, or have shipped to them, more than two cases of wine on a monthly basis, if doing so were not against the law. *Id.*  Yet the Plaintiffs did not allege any of the specifics of the plan or that actual purchases and shipments have been made and thwarted by the law.  The *Coulombe* Plaintiffs failed to provide the who, what, when, where, and how they intended to effectuate their plan or that the plan has been effectuated. *Id.*  Even if those Plaintiffs' allegations regarding their plan to violate the statute were sufficient, they did not allege that they faced any threat whatsoever, let alone a credible threat of prosecution for violation of the statute. *Id.* at 1123. Nor did the *Coulumbe* Plaintiffs allege any past history of prosecution or enforcement under the statute. *Id.*

The case of *Nothing to It!!! v. Jolly*, 06-02653 MJJ (N.D. Cal. 2006),[5] also addresses an identical factual scenario. Plaintiffs in *Nothing to it!!!* included wine customers in California and Nothing to It!!!, a Nevada company.  The court in *Nothing to It!!!* reasoned that Plaintiffs had not alleged a concrete plan to ship wine or an imminent threat of enforcement

---

23661.2." *Coulombe*, 447 at 1121.

   [5]   *Nothing to It!!!* was issued by the Northern District on November 11, 2006.  It is attached in the record but has not yet been published.

proceedings against them.  Those Plaintiffs did not allege any history of past prosecution or enforcement of the law as to themselves or others.  Plaintiffs in *Nothing to it!!!* also failed to identify the particular statute they were challenging or the penalties under the statute.[6]

Plaintiffs cite *National Audubon Society, Inc. v. Davis*, 307 F.3d 835 (9th Cir. 2002) where a suit was brought against various California state officials and agencies by the National Audubon Society and other associations of similar interests, including trapper associations and individual trappers. *Id.* at 842. Plaintiffs brought suit challenging the constitutionality of Proposition 4 passed by California voters which banned the use of certain traps and poisons to capture or kill wildlife in the state. *Id.* at 842-843.  Members of the Plaintiff associations actively trapped wildlife within California and engaged in interstate commerce in shipping and selling furs. *Id.* at 845. Individual trappers had privately trapped with leghold traps; engaged in interstate commerce in furs; used leghold traps to protect crops and livestock; worked as trappers for animal damage control; and trapped as independent contractors for the state to protect levees. *Id.*  On the issue of justiciability, the court reasoned that the trappers had standing. *Id.* at 856.  The trappers alleged that they earned a living through trapping

---

[6] While Plaintiffs in this case do identify the statutes and the penalties under the statutes, they do not allege a concrete and executed plan to ship wine into California, a threat of imminent prosecution, or a history of prosecution or any enforcement under the statutes.  Plaintiffs do not distinguish this case from *Nothing to It!!!*.

related activities and that cessation of their trapping caused them direct economic harm. *Id.*  The economic injury was found to be fairly traceable to the enactment of the proposition and several factors supported the expectation that Proposition 4 would be enforced against the trappers.[7] *Id.*  The court held the trappers' injury redressable because the trappers' had an uncontested history of using the now prohibited traps before the passage of Proposition 4, and they intended to continue trapping if not constrained by the proposition.  This was enough to show that trappers would resume trapping if Proposition 4's ban were declared invalid. *Id.*

## II. Analysis

Ansolabehere claims that she "desires to, and would...purchase for her personal use and shipped to her three cases of wine or more per month" from wine retailers in Non-Reciprocity States.  She also claims that she would also purchase three or more cases of wine in one month from a licensed retailer located in a Reciprocity State.  Ansolabehere does not allege that she has actually placed such orders.  Ansolabehere also claims that she has refrained from carrying into California more than one quart of wine as a passenger on a chartered airplane or flight: 1) which commences and terminates in the United States but does not land outside the United States 2)

---

[7] These factors included 1. the newness of the statute; 2. the explicit prohibition against trapping contained in the text of Proposition 4; 3. the state's unambiguous press release mandating the removal of all traps banned under Proposition 4; 4. the amendment of state regulations to incorporate the provisions of Proposition 4; and 5. the prosecution of one private trapper under Proposition 4.

which commences in Hawaii and/or Alaska and terminates in California and 3) as a passenger in a non chartered flight which commences in Hawaii and/or Alaska and lands in California.  She does not allege that she ever actually attempted to bring more than one quart of wine on a flight and was detained, fined, or sanctioned in any way. The only harm she claims is a deterrence from engaging in the desired activity as a result of Section 23661.1 and Section 23661.2.

Similarly, Wintory brings this claim on the premise that she was unable to fulfill her desire to ship wine to Ansolabehere from her home state of Virginia and was unable to do so.  Wintory claims that she has been harmed because the laws do not permit her to ship the wine to Ansolabehere.  According to the complaint, "Plaintiff Ansolabehere <u>would have accepted</u> Wintory's gift <u>had it been shipped</u>."  There are no allegations that Ansolabehere actually accepted any shipment of wine from Wintory and was sanctioned by California law as a result.  Plaintiffs' only allege a desire to ship and receive wine and a deterrence to do so based on California law.  They do not allege an actual or imminent threat of harm.

The *Coulombe* reasoning applies to this case.  Here, Plaintiffs do not sufficiently allege a concrete plan that violates §§ 23661.2 and 23661.1 to cause actual injury. Plaintiffs make the identical allegations to those in *Coulombe*, i.e., that Plaintiffs here would either ship or have shipped to them more than two cases of wine on a monthly basis if doing so were not against the California law. As in *Coulombe*, Plaintiffs do not allege in specific terms that they paid for and shipped or

caused wine to be shipped to California.  Plaintiffs have not
alleged that they face any credible threat of prosecution for
violation of the statute.  Plaintiffs only allege that they
"would be" exposed to criminal prosecution and seizure if more
than two cases of wine are to be shipped into California.
Further, Defendant offers evidence in the form of affidavit that
the ABC does not have a history of prosecuting anyone under the
statutes; does not have a plan in place to prosecute anyone under
the statutes; does not have a budgetary provision for enforcement
of statutes; and is not contemplating a provision that would
allow it to utilize its staff to pursue the policing of shipments
of wine to a California citizen's home or monitoring passengers
who choose to carry alcoholic beverages into California on
chartered or other air flights.

    Finally, Plaintiffs do not distinguish between this case and
*Coulombe*.  Plaintiffs argue that "salient differences exist
between this case and *Coulombe"* because this case challenges the
constitutionality of both §§ 23661.1 and 23661.2 and here, only
declaratory relief is sought. (Doc. 11, Plaintiffs Motion for
Summary Judgment, n.4, Filed August 21, 2006.)  These differences
run directly into the doctrines of ripeness and the court is
debarred from issuing advisory opinions.  An attempt to order
wine and being denied the order by the retailers for fear of
prosecution under §§ 23661.1 or 23661.2 is insufficient to show a
real or imminent harm.

    Alternatively, this case is distinguishable from *National
Audobon Society*.  Plaintiffs Ansolabehere and Wintory have
offered no evidence that they have suffered economic harm by

**38**

operation of the statute.  Plaintiff Longstreet as a wine

retailer in Virginia has made allegations of economic harm but

has offered no evidence of actual harm suffered other than by

potential lost sales.  Plaintiffs have not offered evidence to

show that whatever economic injury they have suffered is fairly

traceable to §§ 23661.2 and 23661.1.  Unlike the evidence in

*National Audubon*, here Plaintiffs do not respond to Defendant's

evidence that the ABC does not enforce nor does it have budgetary

provisions for enforcement of §§ 23661.1 or 23661.2.  The ABC has

no plans to devote its staff or resources to pursue the policing

of shipments of wine to a California citizen's home or monitoring

passengers who choose to carry alcoholic beverages into

California on air flights.  No ABC record has been identified of

any citation, or threaten to issue a citation, to a California

citizen for receiving wine as a gift or accepting delivery of

wine in California purchased in another state.  The ABC has no

proposal before it to begin issuing citations, or warnings to

California citizens receiving shipments of wine from other

states.  No record has been found demonstrating that the ABC has

ever issued, or threatened to issue, a citation to a passenger

commencing or terminating on a flight, or landing in California

on a leg of a flight, for carrying more than a quart of wine.  No

record has been adduced evidencing that the ABC has ever cited,

or reported, an out-of-state retailer for shipping wine to a

California consumer.  The ABC has no program in place to begin

policing such wine shipments.  Plaintiffs are unlike the trappers

in that they do not have an uncontested history of conduct that

violates the disputed statutes before or since the enactment of

§§ 23661.1 and 23661.2.[8]  Plaintiffs have not met their burden of showing "an actual injury that can be redressed by a favorable judicial decision" to support Article III standing in this case.

Defendant's cross-motion to dismiss for lack of standing is **GRANTED WITH LEAVE TO AMEND.**

### D.    The Relationship Between the Commerce Clause and the Twenty First Amendment

In support of their motion for summary judgment, Plaintiffs argue that the statutes in dispute are facial violations of the commerce clause because they limit the importation of out-of-state wine into California.  Under § 23661.1, there is no restriction on the amount of wine that a passenger, on board a charter or non chartered airplane flight exclusively within California, can carry with them on board the airplane and remove from the airplane once it lands in California.  However, there is a limitation on the amount of wine that a person can bring into California depending on whether the flight is non chartered or chartered, or if the flight landed at some point outside the continental United States before ending in California, or if the

_____

[8] Plaintiffs also refer to a string of cases from other circuits including *Dickerson v. Bailey,* 87 F.Supp. 2d 691, 705 (S.D. Tex. 2000), *Heald v. Engler*, 2001 U.S. Dist. LEXIS 24826 (E.D. Mich. 2001), and *Bainbridge v. Turner*, 311 F.3d 1104, 1107-1108 n.8 (11th Cir. 2002).  These cases are not binding on this court.  These cases hold that standing is established by an inability to obtain, or to sell the wines desired.  The injury in each of these cases is the total prohibition of direct sales by out-of-state wineries.  That scenario is not present in this case.  In this case the issue is whether a limitation on the direct sale of wine by an out-of-state wine retailer, not a winery, to a California resident is a violation of the commerce clause.  California law authorizes the retailer to apply for a permit and to effectuate sales through a California winery.

flight commenced in Alaska or Hawaii and ended in California.

Defendant responds that § 23661.1 does not restrict the importation of wine into the state and that it is a legitimate regulation by the state of alcohol sales.  Defendant argues that regulation of the importation of wine into the state is a valid exercise of the state's Twenty First Amendment Powers.[9]

The parties' arguments present an issue requiring a balance of interests between California's right to regulate alcohol under the Twenty First Amendment and the restraint on states from imposing substantial burdens on interstate commerce under the dormant Commerce Clause.

The Commerce Clause has a "dormant" or "negative" aspect, which restrains the ability of the states to discriminate against or impose substantial burdens on interstate commerce. *Oregon Waste Sys. v. Department of Envtl. Quality*, 511 U.S. 93, 98 (1994).  If a state law restricting the flow of interstate commerce is facially discriminatory, or discriminatory in its purpose or effect, it is subject to a strict scrutiny test. Under this test, discrimination against interstate commerce "is per se invalid, save a narrow class of cases in which the state can demonstrate, under rigorous scrutiny, that it has no other means to advance a legitimate local interest." *C&A Carbone, Inc. v. Town of Clarkstown,* 511 U.S. 383, 392 (1994).  Once a

---

[9]   The aim of the Twenty-First Amendment is to allow states to maintain an effective and uniform system for controlling liquor by regulating its transportation, importation, and use. The Amendment does not give states the authority to pass non uniform laws in order to discriminate against out of state goods. *Granholm v. Heald*, 544 U.S. 460, 492 (2005).

plaintiff demonstrates that a regulatory scheme discriminates against interstate commerce, the burden shifts to the defendant to demonstrate that it has no other non-discriminatory means to advance a legitimate local interest. *Granholm v. Heald*, 544 U.S. 460, 492 (2005).

However, under the Twenty First Amendment, the Commerce Clause is to be considered in light of the states' rights to regulate alcohol. "Under the U.S. Const. amend. XXI, § 2, the states enjoy broad powers to regulate the importation and use of alcoholic beverages within their borders." *Stein Distributing Co. v. Department of Treasury Bureau of Alcohol, Tobacco, & Firearms*, 779 F.2d 1407, 1410 (9th Cir. 1986). "The primary effect of the amendment is to create an exception to the normal operation of the Commerce Clause." *Id.* "Although the federal government retains Commerce Clause authority to regulate interstate commerce in liquor, the Commerce Clause must 'be considered in light of the Twenty First Amendment and in the context of the issues and interests at stake in any concrete case.'" *Id.* "A state has virtually complete control only over interests that engage in the 'core powers' reserved to the states by the Twenty First Amendment – that of exercising 'control over whether to permit importation or sale of liquor and how to structure the liquor distribution system.'" *Id.*

The Supreme Court addressed challenges to state laws regulating the sale of wine from out-of-state wineries to consumers in *Granholm v. Heald*. The issue in *Granholm* was whether "a state's regulatory scheme that permits in-state wineries to ship alcohol directly to consumers but restricts the

**42**

ability of out-of-state wineries to do so violates the dormant
Commerce Clause in light of § 2 of the Twenty First Amendment."
*Id.* at 471.   The wine producers in *Granholm* were small wineries
that relied on direct consumer sales as an important part of
their businesses. *Id.* at 468.   At issue were statutes from the
state of Michigan and from the state of New York.   *Id.* at 465.
Under Michigan law, wine producers, as a general matter, had to
distribute their wine through wholesalers. *Id.* at 469.   An
exception applied to Michigan's in-state wineries, which were
eligible for licenses that allowed direct shipment to in-state
consumers. *Id.*   Out-of-state wineries could obtain an "outside
seller of wine" license for $300 but were limited to selling wine
only to in-state wholesalers and not directly to state resident
consumers. *Id.*   Under the New York statute at issue, wineries
that produced wine only from New York grapes would be able to
apply for a license that allows direct shipment to in-state
consumers. *Id.*   These licensees were able to deliver the wines of
other wineries as well, but only if the wine was made from grapes
that were at least seventy-five percent by volume from grapes
grown in New York. *Id.* at 470.   The court reasoned that laws of
the type at issue contradict the principles of prohibiting
discrimination against interstate commerce. *Id.* at 472:

> "[These statutes] deprive citizens of their right to
> have access to the markets of other States on equal
> terms. *Id*. at 473.   State laws that protect local
> wineries have led to the enactment of statutes under
> which some States condition the right of out-of-state
> wineries to make direct wine sales to instate consumers

**43**

on a reciprocal right in the shipping State. *Id.*"

The court proceeded to specifically mention California's reciprocity regime when stating:

"California, for example, passed a reciprocity law in 1986, retreating from the State's previous regime that allowed unfettered direct shipments from out-of-state wineries.  Prior to 1986, all but three States prohibited direct shipments of wine.  The obvious aim of the California statute was to open the interstate direct shipping market for the State's many wineries.  The current patchwork of laws, with some States banning direct shipments altogether, others doing so only for out-of-state wines, and still others requiring reciprocity, is essentially the product of an ongoing, low level trade war.  Allowing states to discriminate against out-of-state wine invites a multiplication of preferential trade areas destructive of the very purpose of the Commerce Clause." *Id.*

The Court ultimately concluded that the statutes discriminated against interstate commerce through its direct-shipping laws. *Id.* at 476.

Plaintiffs frame the issue in this case as whether the Supreme Court's holding in *Granholm v. Heald*, 544 U.S. 460 (2005) is applicable to California's wine shipment laws as applied to out-of-state licensed retailers and California consumers seeking to ship wine from out-of-state to residents of California.

In response to *Granholm*, the California Legislature added §

**44**

23661.3[10]   According to the legislative history of § 23661.3, the legislation sought to "eliminate the requirement that an unlicensed adult apply and be issued a permit to receive a shipment of wine." Deering's California Advanced Legislative Service, 2005 Cal ALS 157 (2005).   The state also sought to provide that "a licensed winegrower who obtains a wine direct shipper permit may sell and ship wine directly to a California resident, for personal use, under specific conditions." *Id.* However, no corresponding change was made relative to the shipment of wine by out-of-state individuals and retailers.   The two case limitation and the need for reciprocity remains a requirement for out-of-state licensed retailers according to § 23661.2.

Unlike the Michigan and New York statutes which completely banned direct shipment to in state consumers from out of state wineries that did not meet the statutes' conditions, the statutes in this case are not a complete ban on direct shipment to California consumers.   Section 23661.2 merely regulates the amount of wine shipped to directly to California consumers on a monthly basis.   Section 23661.1 also regulates the amount of wine brought into California by a resident in limiting the amount of wine the resident may bring per flight.   Further, California residents may have an unlimited shipment of wine from out-of-

---

[10] Cal. Bus. & Prof. Code § 23661.3 provides "Notwithstanding any law, rule, or regulation to the contrary, any person currently licensed in this state or any other state as a winegrower who obtains a wine direct shipper permit pursuant to this section may sell and ship wine directly to a resident of California, who is at least 21 years of age, for the resident's personal use and not for resale."

state wineries themselves.  While the Supreme Court alluded in *Granholm* to the proposition that statutes requiring reciprocity could potentially discriminate against interstate commerce, the Court failed to expressly decide the issue.  Plaintiffs provide no argument in law to support this premise or to show that the statutes at issue in this case go beyond California's broad powers under the Twenty First Amendment to regulate the importation of alcohol into the state.

The only other case to address the issue present before the court is the case of *Brooks v. Vassar*, 462 F. 3d 341, 351 (4th Cir. 2006).  Plaintiffs in *Brooks* challenged Virginia's Personal Import Exception, *Virginia Code § 4.1-310(E)(i),* that prohibited the importation of alcoholic beverages into Virginia except through a three-tier structure.[11]  *Id.* at 349.  Plaintiffs' challenge to the Personal Import Exception included an argument that the provision violated the dormant Commerce Clause because consumers could purchase unlimited amounts of wine from a Virginia retailer, but were limited in their wine purchases from an out-of-state retailer. *Id.* at 350.  The court reasoned that Plaintiffs' in arguing that an in state retailer under Virginia's three tiered structure is favored over an out of state retailer, Plaintiffs were challenging the three tiered system itself. *Id.* at 352.  The court reasoned that this argument was foreclosed by the Twenty First Amendment and the Supreme Court's decision in *Granholm*, which upheld the three tier system as 'unquestionably legitimate." *Id.*  The court further held:

---

[11] The three tier structure is made up of in-state wineries, wine wholesalers and wine retailers.

**46**

1
2
3
4
5
6
7
8
9
10
11

"As the ABC Act now stands, all out-of-state suppliers
of wine are required by Virginia to sell in Virginia
through the tier system... and the Personal Import
exception to that import restriction does not favor in-
state wineries.  Indeed, it favors the out-of-state
wineries insofar as one gallon or four liters of wine
may be imported into Virginia outside of the three-tier
structure, whereas in-state wineries can sell only
through the three tier structure or from their own
retail premises for which they must obtain a separate
retail license."

*Id.* at 352.  The court found that the Personal Import Exception
was an exception only to Virginia's import regulation which is
different from the sales regulation. *Id.* at 353.  Comparing in-
state sales with importation does not give rise to a legitimate
comparison for determining discrimination. *Id.* The only fair
comparison is how the statute treats in-state and out-of-state
sales, in-state and out-of-state wineries or in-state and out-of-
state products. *Id.*

The court stated that "because the Twenty-first Amendment
grants the states virtually complete control over whether to
permit importation or sale of liquor and how to structure the
liquor distribution system, and because the dormant commerce
clause only prevents a State from enacting regulation that favors
in-state producers and thus discriminates against interstate

**47**

commerce, the Personal Import Exception does not violate the Clause."[12] *Id.*

Though the parties do not raise the issues addressed in *Brooks*, the California statutes at issue appear to be similar to Virginia's personal import exception. In their motion for summary judgment, Plaintiffs' have failed to provide any evidence of the full structure of alcohol regulation in California. It is unknown whether California's regulatory structure is similar to the three tiered structure held "unquestionably legitimate" by *Granholm*. However, it appears, as in *Brooks*, that the statutes at issue here regulate wine imports rather than wine sales in the state of California.

---

[12] Finally, in response to the argument that Virginia's Personal Import Exception is a form of economic protectionism, the court stated

"While the favortism shown by Virginia in this case to local wineries by allowing them to sell directly to consumers did amount to economic protectionism that violated the dormant Commerce Clause, the Commonwealth's interest in otherwise regulating the importation, transportation, and use of wine in Virginia is protected by the Twenty-first Amendment. It is readily apparent that the Personal Import Exception is not economic protectionism but part of Virginia's import regulation. It provides a de minimis exception to Virginia's import regulations, allowing consumers to import one gallon or four liters of wine for personal consumption. Under no economic construct could such a provision be considered economic protectionism of local industry. To the contrary, it actually amounts to disadvantage local wineries whose wine may only be purchased through retailers. Accordingly we hold that for this additional reason, the Personal Import Exception does not violate the dormant Commerce Clause."

*Id.* 354-355.

**48**

Plaintiffs' complaint was dismissed for lack of standing. However, had the complaint not been dismissed, it would seem that, in light of *Brooks,* a triable issue exists as to whether the California statutes at issue regulate wine imports rather than wine sales, and whether, as a result, they are well within California's right to regulate alcohol under the Twenty First Amendment.

### CONCLUSION

For the reasons set forth above,

(1) Plaintiffs' motion for summary judgment is **DENIED.**

(2) Defendant's cross-motion to dismiss for lack of standing is **GRANTED WITH LEAVE TO AMEND.**

IT IS SO ORDERED.

**Dated:    September 25, 2007**          **/s/ Oliver W. Wanger**
                                         UNITED STATES DISTRICT JUDGE